UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON NOROMA,<br><br>    Plaintiff,<br><br>    v.<br><br>HOME POINT FINANCIAL CORPORATION,<br><br>    Defendant. | Case No. 17-cv-07205-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 50 |

Pending before the Court is Plaintiff Brandon Norona's unopposed motion for preliminary approval of a class action and collective settlement.[1] *See* Dkt. No. 50-1 ("Mot."). The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. For the following reasons, the Court **GRANTS** the motion for preliminary approval of the class action and collective settlement.

I. **BACKGROUND**

    A. **Factual Allegations**

Norona worked in California for Defendant Home Point Financial Corporation, which "sell[s] loans to consumers." *See* First Amended Complaint ("FAC") ¶ 6, 13. Norona was a non-exempt employee who "worked overtime and earned bonuses and commission wages." *Id.* ¶ 13. He "regularly worked in excess of" eight hours per workday or forty hours per workweek. *Id.* Norona alleges that he, like other Home Point employees, was "not compensated" for all of the

---

[1] The initial complaint spells the Plaintiff's name as "Brandon Noroma" and the case was captioned based on that spelling. *See* Complaint, Dkt. No. 1. However, in the stipulation regarding the filing of a First Amended Complaint, Plaintiff clarifies that the correct spelling is "Norona." *See* Dkt. No. 21 at 1. The Court will use the corrected spelling notwithstanding the case caption.

hours he worked, including "proper overtime," which violated the Fair Labor Standards Act ("FLSA") and California law. *Id.* ¶ 7, 13.

Norona brought his claims on behalf of two groups of non-exempt Home Point employees, including "loan originators, mortgage professionals, loan officers, and loan processors" who "worked overtime and earned commission and bonus pay." *Id.* ¶ 7. First, he asserted a nationwide, opt-in collective action under FLSA, 29 U.S.C. § 216(b), on behalf of Home Point employees who worked from three years prior to the filing date up to the date of judgment. *See id.* ¶ 8. His FLSA action sought "to (i) recover unpaid wages and overtime compensation owed to the FLSA Employees, (ii) obtain an equal amount in liquidated damages, as provided by Section 16(b) of the FLSA, and (iii) recover reasonable attorneys' fees and costs of the action, as provided for by Section 16(b) of the FLSA." *Id.* Second, he asserted claims under the California Labor Code and California Business and Professions Code as part of an opt-out class action composed of Home Point employees who worked from four years prior to the filing date up to the date of judgment and also under the California Private Attorneys General Act ("PAGA"). *Id.* ¶¶ 4, 9, 48–53.

### B. Procedural History

Norona filed his initial complaint on December 19, 2017. *See* Dkt. No. 1. He filed a first amended complaint on March 21, 2018. *See* FAC.

The parties held a mediation before the Hon. William J. Cahill on May 17, 2018, at which they reached a settlement in principle. *See* Dkt. No. 32. They filed this motion for settlement on November 8. *See* Mot. The Court held a hearing on December 13, after which it took the motion under submission. *See* Dkt. No. 51 (minute entry).

### C. Proposed Settlement Agreement

Following a day-long mediation, the parties agreed to settle the case in its entirety. *See* Mot. at 2; Dkt. No. 50-4, Ex. 1 ("Settlement Agreement" or "SA"). The proposed settlement covers two classes of Home Point employees: the FLSA Collective (also known as the Settlement Collective) and the California Class (also known as the Settlement Class). *See* Mot. at 2; *see also* SA at 11, 13. The FLSA Collective is an opt-in collective that includes 1,392 members employed by Home Point outside of California from December 19, 2014 to September 30, 2018; it settles

2

claims under FLSA. *See* Mot. at 1–2, 8. The California Class is an opt-out class of 254 members employed by Home Point in California from December 19, 2013 to September 30, 2018; it settles overtime claims under FLSA as well as California-law claims related to overtime pay, waiting time penalties, and meal and rest breaks. *See id.* Plaintiff intends to file a Second Amended Complaint adding Plaintiff Linda Corbin as a representative for the FLSA Collective. *See* SA ¶ 3.1; *see also* SA Ex. F (proposed Second Amended Complaint).

The key terms of the Settlement Agreement are as follows:

### i. Class Definitions

FLSA Collective:

> [A]ll persons currently or previously employed by Defendant in the United States while residing outside California, including under Defendant's previous name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, or efficiency, from December 19, 2014, through and including September 30, 2018, who have not previously released their claims. Individuals who resided in California for part of the relevant time period and outside of California for part of the relevant time period are included in the Settlement Class for the workweeks employed by Defendant and residing in California, and included in the Settlement Collective for the workweeks employed by Defendant and residing in the United States but outside of California.

SA ¶ 2.41.

California Class:

> [A]ll persons currently or previously employed by Defendant in California, including under its prior name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, or efficiency, from December 19, 2013 through and including September 30, 2018, who have not previously released their claims. The Settlement Class does not include any person who was employed solely by Stonegate Capital Corporation and/or Cross-Line Capital, Inc. in California. Individuals employed as a non-exempt inside loan agent, mortgage advisor, or mortgage loan officer at Stonegate Capital Corporation and/or Cross-Line Capital, Inc. and subsequently employed by Defendant while residing in California as non-exempt employee are included in the Settlement Class but only for the period of time employed by Defendant starting June 1, 2017. . . . Individuals who resided in California for part of the relevant time

3

> period and outside of California for part of the relevant time period are included in the Settlement Class for the workweeks employed by Defendant and residing in California, and included in the Settlement Collective for the workweeks employed by Defendant and residing outside of California.

SA ¶ 2.35.

Defendant estimates that there are approximately 1,392 people in the Settlement Collective and approximately 254 people in the California Class. *See* SA ¶¶ 2.35, 2.41.

### ii. Settlement Payout

FLSA Collective: Up to $500,000 total, with amount paid out based on the number of opt-ins. SA ¶ 4.1. After fees and costs, Plaintiff estimates that up to $305,214.07 will be paid out to members of the FLSA Collective. Mot. at 18. FLSA Collective members will receive a pro-rata share of the available funds, based on the number of weeks worked during the covered period. *Id.* at 10. The average award (after fees and expenses) is expected to be about $200. *Id.* For tax purposes, the awards will be allocated as 50% wages and 50% liquidated damages. SA ¶ 5.9.1.

California Class: $1.725 million total, non-reversionary. SA ¶ 4.1. After fees and costs, Plaintiff estimates that $1.1 million will be paid out to California Class members. Mot. at 18. Class members will receive a pro-rata share of the available funds, based on the number of weeks worked during the covered period. *Id.* at 10. The average award (after fees and expenses) is expected to be over $4,000. *Id.* For tax purposes, the awards will be allocated as one-third wages, one-third statutory and civil penalties, and one-third interest. SA ¶ 5.9.1.

PAGA Allocation: $25,000 will be allocated to settle claims under PAGA. SA ¶ 2.21. Three-quarters ($18,750) will be paid to the California Labor Workforce Development Agency and one-quarter ($6,250) will be paid to the California Class. *Id.*; *see also* Mot. at 9–10. All California Class members (even those who opt out) will receive their pro-rata share of the PAGA payment. Mot. at 11.

### iii. Release

FLSA Collective:

> "[A]ny and all present and past claims, actions, demands, causes of action, suits, debts, obligations, rights or liabilities, arising out of their employment with Home Point based on the facts, conduct, claims, and/or allegations in the Complaint, First Amended Complaint and

4

Second Amended Complaint pursuant to the Fair Labor Standards Act, 29 U.S.C. sections 201 *et seq.* regarding non-payment of wages, minimum wages, overtime wages, and any other compensation (including but not limited to regular rate calculations and overtime premium pay), failure to timely pay any compensation (including but not limited to wages, bonuses, or commissions), and includes all wages, overtime, overtime premium, liquidated damages, costs and expenses, attorneys' fees, declaratory relief, injunctive relief, equitable remedies, exemplary or punitive damages, and/or pre- or post-judgment interest, at any time during the Settlement Collective Period of December 19, 2014, through September 30, 2018. Settlement Collective Members' Released Claims also includes all claims that the Settlement Collective Members may have against the Released Parties relating to (i) the payment, taxation and allocation of attorneys' fees and costs to Class Counsel pursuant to this Settlement Agreement and (ii) the payment, taxation and allocation of Plaintiffs' Service Awards pursuant to this Settlement Agreement.

SA ¶ 2.44.

California Class:

[A]ny and all present and past claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature alleged in the Complaint, the First Amended Complaints, the proposed Second Amended Complaint ("the Complaints") and/or in Plaintiff Norona's December 14, 2017 PAGA letter to the LWDA concerning Defendant ("the PAGA Letter"), or which could have been asserted based on the facts alleged in the Complaints and/or the PAGA letter, including without limitation all claims for unpaid wages, minimum wage, overtime, double-time, wages (including the calculation of the regular rate), failure to timely pay compensation (i.e., wages, bonuses, or commissions), failure to provide compliant meal periods and rest breaks, failure to reimburse business expenses incurred, wage statement violations, and untimely final pay, seeking wages, overtime, overtime premium pay, exemplary or punitive damages, waiting time penalties, civil penalties, statutory penalties, liquidated damages, restitution, declaratory relief, injunctive relief, equitable remedies, attorneys' fees, costs, disbursements, and/or pre- or post-judgment interest, at any time from December 19, 2013 through September 30, 2018. The Settlement Class Members' Released Claims include all claims alleging violations of, or seeking relief under, California Labor Code sections 200, 201, 201.3, 202, 203, 204, 204b, 204.1, 204.2, 205, 205.5, 208, 218, 218.6, 226, 226.3, 226.7, 501, 502, 503, 504, 505, 506, 507, 508, 510, 512, 515, 558, 1182, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198, 2802, 2810.5, 2698 *et seq.*, the California Industrial Wage Commission Wage Orders, the California Business and Professions Code sections 17200 *et seq.*; and any other similar laws. Settlement Class Members' Released Claims also include all claims that Plaintiffs and/or the Settlement Class Members may have against the Released Parties relating to (i) the payment, taxation and allocation of attorneys' fees and costs to Class Counsel pursuant to this Settlement Agreement and (ii) the payment, taxation and allocation of Plaintiffs' Service Awards pursuant to this Settlement Agreement. Settlement Class Members' Released Claims also include Plaintiffs' causes of action/claims for

penalties under PAGA, which are fully released by Settlement Class Members.

SA ¶ 2.38.

### iv. Class Notice & Procedure

The parties have agreed on a third-party settlement administrator to send notices to class members. *See* Mot. at 11–12; *see also* Dkt. No. 50-4, Ex. 5. They have attached the proposed notices to be sent to the FLSA Collective and the California Class. *See* SA, Exs. A, B. Recipients will have 60 days from the mailing date to opt in (for members of the FLSA Collective) or to opt out or object (for members of the California Class). SA ¶¶ 2.9, 3.2.

### v. Service Awards

The Settlement Agreement contemplates a service award to Norona and Corbin of up to $10,000 each. SA ¶ 2.31.

### vi. Attorneys' Fees and Costs

Counsel for Plaintiff will file a separate motion for attorneys' fees, for up to one-third of the gross settlement fund of $2.225 million. SA ¶ 4.3. Plaintiff proposes to allocate 77.5% of attorneys' fees and costs to the California Class and 22.5% to the FLSA Collective. SA ¶ 4.3; Mot. at 10. Plaintiff estimates that administrative costs for the Settlement Administrator will total $23,410.92 for the FLSA Collective and $4,089.08 for the California Class. SA ¶ 2.34; Mot. at 10.

## II. PROVISIONAL CLASS CERTIFICATION

Provisional class certification is a prerequisite to preliminary approval of a class action settlement. The Court finds these requirements met and provisionally certifies the California Class for settlement purposes.

### A. Legal Standard

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, he must establish that at least one

of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## B. Analysis

### i. Rule 23(a) Certification

#### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that joinder of the 254 members of the California Class would be impracticable.

#### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Here, the central question is whether Home Point maintained a policy of failing to properly include bonus payments and commissions in the regular rate when it calculated the overtime rate. *See* Mot. at 14. Thus, the Court finds that the commonality requirement is met.

#### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether

other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Norona is typical of the California Class because he held a similar position and suffered the same type of injury because of his employment with Home Point as did the putative class members.

#### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court finds that there are no conflicts of interest and that Plaintiff and counsel have prosecuted this action vigorously, including by reaching this settlement agreement prior to class certification.

#### ii. Rule 23(b)(3) Certification

To certify a class, a plaintiff must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

The Court concludes that common questions predominate here because the issue of whether Home Point's payroll method was proper is susceptible to class-wide proof. Although the class members will need to rely upon individual evidence to some extent to calculate their individual damages, "damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). *See also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013) (noting that "damages determinations are individual in nearly all wage-and-hour class actions").

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

A class action is superior here because it is a more efficient use of Court and attorney resources, reduces costs to the class members by allocating costs among them, the forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### C. Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Norona as class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have submitted declarations of their expertise in representing plaintiffs in class action suits, especially in the area of wage and hour violations. *See* Declaration of Reuben Nathan, Dkt. No. 50-2; Declaration of John Glugoski, Dkt. No. 50-3 at 2–4. Accordingly, the Court appoints the law firms of Righetti Glugoski, P.C. and Nathan & Associates, APC as class counsel.

### III. CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION

Employees may bring a collective action on behalf of other employees who are "similarly situated" under the FLSA. 29 U.S.C.A. § 216(b). Certification of a collective action is within the discretion of the district court. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013).

Courts typically make an initial determination at the notice stage as to whether plaintiffs are "similarly situated." *See Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019). "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) (citing cases).

The Court finds that Plaintiff has satisfied the lenient standard for conditional FLSA certification. Plaintiff has shown that the potential FLSA Collective members were subject to the same policy that resulted in Defendant's alleged failure to pay them overtime wages in violation of

the FLSA. Plaintiff has demonstrated that potential FLSA Collective members are "similarly situated" by meeting the more stringent requirements for conditional class certification, as discussed above in Section II.

## IV. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *3 (N.D. Cal. Mar. 27, 2017). Courts lack the authority, however, to "delete, modify or substitute certain provisions." *Hanlon*, 150 F.3d at 1026. Rather, the "settlement must stand or fall in its entirety." *Id.*

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Such signs of self-interest include class "counsel receiv[ing] a disproportionate distribution of the settlement," the negotiation of a "clear

11

sailing" arrangement in which attorneys' fees are paid separate from class funds, and "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947.

## B. Analysis

### i. Settlement Process

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

This settlement was reached after considerable arms-length bargaining between the parties, including a full-day formal mediation conducted by a mediator experienced with wage and hour class action cases. *See* Mot. at 17; *see also* Dkt. No. 32 (status report on mediation). This process weighs in favor of granting preliminary settlement approval. *See also Satchell v. Fed. Exp. Corp.,* No. C 03–2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### ii. Preferential Treatment

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives." *See In re Tableware*, 484 F. Supp. 2d at 1079.

Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Such awards are "fairly typical" but "discretionary." *Id.* at 958. Plaintiffs must provide sufficient evidence to allow the Court to "evaluate [the named plaintiff's] award[] individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class

has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation omitted). Courts in this district have routinely stated that a $5,000 award is "presumptively reasonable." *See Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-00362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009).

The Settlement Agreement authorizes Norona and Corbin to seek incentive awards of up to $10,000 each for their roles in this lawsuit. *See* SA ¶ 2.31. And the Agreement provides that if the Court approves a reduced award, the remainder will be distributed to members of the FLSA Collective and California Class. *See id.* Class counsel contends that the requested incentive awards are reasonable because they compensate the named Plaintiffs "for the important role they played for the benefit of the class, and the substantial time, effort, and risks they undertook to secure the result obtained on behalf of the class." Mot. at 22. The Court finds that at the preliminary approval stage, the intent to seek incentive awards does not improperly grant preferential treatment to any segment of the class, particularly because any portion of the award that the Court declines to grant will be distributed to Class and Collective members.

### iii. Settlement Within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. This requires the Court to evaluate the strength of Plaintiff's case.

Class counsel estimates that the total value of the claims for the FLSA Collective ranges from zero to $1 million. Mot. at 19. And counsel estimates that after fees and costs, roughly $300,000 of the $500,000 settlement will be paid out to members of the Collective. *Id.* at 18. Thus, the FLSA Collective will receive a recovery equal to roughly 30% of the high-end estimate.

With respect to the California Class, class counsel estimates that the value of the claims are zero to $2.47 million for the overtime claims, zero to $3.5 million for the meal and rest break claims, and zero to $1.7 million for the waiting time penalties and PAGA claims. *See* Mot. at 18–

13

1  19. This amounts to a total exposure of between zero and $7.67 million. Class counsel calculates that of the $1.725 million settlement, approximately $1.1 million will be paid out to members of the California Class after fees and costs. *See id.* at 18. Based on these estimates, the settlement amounts to an approximately 14% recovery as compared to the high-end estimate.

Class counsel has highlighted some of the specific defenses raised by Defendant that could result in class members receiving less than the high-end estimate were this case to proceed rather than settle. For example, the Court might find that Defendant "properly calculated the overtime rate," that "certain Class Members did not always work overtime," that the three-year statute of limitations did not apply, or that liquidated damages were unwarranted. *See* Mot. at 18–19.

Given the expected recovery and enumerated defenses, along with the usual risks and costs of continued litigation, the Court finds that the settlement is within the range of possible approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies.

\*   \*   \*

In addition, the Court notes that although FLSA collective action settlements require court approval, that approval need not occur at the preliminary stage as with a Rule 23 class action. *See Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at \*2 (N.D. Cal. Aug. 15, 2013). Nevertheless, on the record provided, and for the same reasons as discussed above, the Court preliminarily finds the FLSA collective action settlement to be "fair and reasonable." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Bisaccia*, 2019 WL 861425, at \*5 n.1.

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

### V. MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## VI. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, *see* SA Exs. A, B, is the best practicable form of notice under the circumstances.

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action and collective settlement. The Court **DIRECTS** Plaintiff to file the proposed Second Amended Complaint within three days of this order.

The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative members of the California Class and FLSA Collective | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for California Class members to opt out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Deadline for FLSA Collective members to opt in | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 4/12/19

HAYWOOD S. GILLIAM, JR.
United States District Judge

16