**RIGHETTI GLUGOSKI, P.C.**
MATTHEW RIGHETTI, State Bar No. 121012
Matt@righettilaw.com
JOHN GLUGOSKI, State Bar No. 191551
Jglugoski@righettilaw.com
456 Montgomery Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 983-0900
Facsimile: (415) 397-9005

**NATHAN & ASSOCIATES, APC**
 Reuben D. Nathan, Esq. (SBN 208436)
 Email:  *rnathan@nathanlawpractice.com*
 2901 W. Coast Hwy., Suite 200
 Newport Beach, CA 92663
 Tel: (949) 270-2798
 Facsimile: (949) 209-0303

Attorneys for Plaintiffs, BRANDON NORONA and
LINDA CORBIN and the Proposed Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON NORONA and LINDA CORBIN, on behalf of themselves and all similarly situated persons, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>Home Point Financial Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 4:17-cv-07205-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL**<br><br>Judge: The Hon. Hayward S. Gilliam Jr.<br><br>Complaint Filed:  December 19, 2017<br>Trial Date:  None Yet Set<br><br>Hearing Date: September 26, 2019<br>Time: 2:00 p.m. |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 26, 2019, at 2:00 p.m., or as soon thereafter as the parties may be heard, Plaintiffs will move, and hereby do move, this Court for an Order granting Final Approval pursuant to Fed.R.Civ P. 23(e).

This motion is based on the accompanying Memorandum of Points and Authorities; the Declarations of Nathalie Hernandez and John Glugoski in support of motion for final approval, and the exhibits attached thereto; such oral argument as may be heard by the Court; and all other papers on file in this action.

Respectfully submitted,

Dated: August 19, 2019                    RIGHETTI GLUGOSKI, P.C.

By: /s/ John Glugoski
John Glugoski
*Attorneys for Plaintiffs and the Class*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A. Overview of Case and Results ................................................................................. 2

    B. Parties and Representation ....................................................................................... 5

    C. Settlement Negotiations and Procedural History .................................................... 5

III. SUMMARY OF SETTLEMENT TERMS ........................................................................ 7

IV. STATUS OF NOTICE PROCEDURE………………………………………………………8

    A. Notices Sent Out, Re-Mailed, And Inquiries Received ............................................... 8

    B. Only Two Requests For Exclusion ………………………………………………......9

    C. No Objections………………………………………………………………………….9

V. FINAL SETTLEMENT APPROVAL IS APPROPRIATE……………………………......9

    A. The Settlement Is Entitled To A Presumption Of Fairness……………………………..9

    B. The Parties Reached The Settlement Through Arm's Length Negotiations…………..10

    C. Substantial Discovery Facilitated Arm's-Length Negotiations………………………..10

    D. The Parties Have Reasonably Tailored the Monetary Recovery
        To Each Class Member's Claim……………………………………………………….11

    E. Class Counsel Are Experienced And Endorse The Settlement………………………..11

    F. The Named Plaintiffs Have Been Required To Enter Into General Releases, Waiving
       Viable Claims………………………………………………………………………….12

VI. CONCLUSION………………………………………………………………………….13

# **TABLE OF AUTHORITIES**

*Boyd v. Bechtel Corp*
485 F. Supp. 610 (N.D.Cal. 1979)……………………………..……………………………..11

*Dunk v. Ford Motor Company*
48 Cal.App.4th 1794(1996)……………………………..……………..………………….9, 10

*Ellis v. Naval Air Rework Facility*
87 F.R.D. 15 (N.D.Cal.1980)……………………………..……………………………..…..11

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*
630 F. Supp. 482 (E.D. Pa. 1985)……………………………..……………………………...11

*Huguley v. General Motors Corp.*,
128 F.R.D. 81,85 (E.D.Mich. 1989)……………………………..………………………...…12

*League of Martin v. City of Milwaukee*,
588 F.Supp. 1004 (E.D. Wis 1984)……………………………..………………………….....12

*Lo Re v. Chase Manhattan Corp.*,
1979 U.S. Dist. LEXIS 12210 at *16-17 (S.D.N.Y. May 23, 1979)…………………………12

*Malibu Outrigger Bd. of Governors. v. Superior Court*
103 Cal.App.3d. 573 (1980)……………………………..……………………….…………...10

*Mallick v. Superior Court*
89 Cal.App.3d 434 (1979)……………………………..………………………………………10

*Officers for Justice v. Civil Service Com.*
688 F.2d 615 (9th Cir. 1982)……………………………..…………………………….......9, 10

*Thorton v. East Texas Motor Freight*,
497 F.2d 416,420 (6th Cir. 1974)……………………………..………………………………11

*White v. National Football League*,
822 F.Supp 1389, 1406 (D. Minn 1993)……………………………..……………………….12

**SECONDARY AUTHORITIES**

CCP § 382....................................................................................................................................9

CCP § 1781(f)…………………………………………………………………………...……9

Fed. R. Civ. P. 23(e)……………………………………………………………..……………9

*Manual for Complex Litigation*
(4th Ed. 2007) §§ 21.632-21.634……………………………………………….....................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case has been pending for more than 2 years.[1] The parties reached a fair, reasonable, and equitable result in this case as embodied in the preliminarily approved settlement agreement. The preliminarily-approved settlement provides monetary benefits to a total of 1631 class members -- 255 class members of the California Class and 1382 members of the FLSA Class who were provided notice (i.e. non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, or efficiency, from December 19, 2013 or December 19, 2014, respectively, through and including September 30, 2018).

Of the 255 California Class Members, there is a 99% participation rate (253 Participating Class Members and 2 Requests for Exclusion.   Of the 1382 FLSA Class Members, 451 opted in to the case.[2] That is a 33% opt in rate for the FLSA class.  (Declaration of Nathalie Hernandez, Claims Administrator).

The results achieved through this settlement provide just and reasonable compensation to the Classes in light of the claims litigated and the defenses asserted by Defendant. Thus, Plaintiffs submit that the goals sought to be achieved when this litigation was initiated have been achieved.

There have been no objections received to date. There have been only two opt-outs of the settlement from the California Class.

The deadline to opt out or object to the settlement was July 20, 2019.

The proposed settlement of this action is fair, reasonable and adequate and in the best interests of the Class. Accordingly, the Court should have no hesitation granting final approval.

Plaintiffs requests that the Court do the following:

---

[1] Class Counsel also engaged in an in-depth analysis prior to filing the lawsuit, including interviewing class members. In addition, Class Counsel prevented copycat lawsuits by other plaintiff's counsel from being filed in other jurisdictions, which would have created confusion and most likely prolonged the litigation.
[2] The 931 individuals who did not opt in to the FLSA class will not have their FLSA claims released.

1. Grant final approval including the requests for attorneys' fees, litigation costs, administration costs and the Class Representative enhancement; and

2. Though none are foreseen at the present time, resolve any additional class member issues that may come up at the hearing.

## II. BACKGROUND

### A. Overview of Case and Results

This settlement seeks resolution of a class and collective action filed against Defendant on December 19, 2017 on behalf of:

California Class (aka "Settlement Class")

All persons currently or previously employed by Defendant in California, including under its prior name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors, and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, efficiency, from December 19, 2013 through and including September 30, 2018, who have not previously released their claims. The Settlement Class does not include any person who was employed solely by Stonegate Capital Corporation and/or Cross-Line Capital, Inc in California. Individuals employees as non-exempt inside loan agent, mortgage advisor, or mortgage loan officer at Stonegate Capital Corporation and/or Cross-Line Capital, Inc. and subsequently employed by Defendant while residing in California as non-exempt employee are included in the Settlement Class but only for the period of time employed by Defendant starting June 1, 2017.

FLSA Collective (aka "Settlement Collective")

All persons currently or previously employed by Home Point Financial Corporation in the United States while residing outside California, including under Defendant's previous name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependant on hours worked, production, or efficiency from December 19, 2014 through and including September 30, 2018.

As set forth in the Motion for Preliminary Approval, on December 19, 2017, Plaintiff Brandon Norona filed this lawsuit ("Norona Action") as a proposed class and collective action complaint in the United States District Court for the Northern District of California. A First Amended Complaint was filed on March 21, 2018 on behalf of himself and all other employees similarly situated, alleging class action wage and hour claims alleging Defendants had a uniform

policy and practice that (a) failed to properly include commissions and certain bonuses in the regular rate and when calculating wages for days/weeks where class members worked overtime under both the FLSA and California Law, (b) failed to properly included required wage statement information pursuant to California Labor Code Sec. 226 and (c) failed to pay all wages owed at termination pursuant to Labor Code Sec. 203. Plaintiff also seeks civil penalties pursuant to the Private Attorneys' General Act and related relief as attorneys' fees and costs of suit per statute. A second amended complaint was filed on November 8, 2018, on behalf of himself, Linda Corbin, an out of state plaintiff, and all other employees similarly situated, alleging class action wage and hour claims alleging Defendants had a uniform policy and practice that (a) failed to properly include commissions and certain bonuses in the regular rate and when calculating wages for days/weeks where class members worked overtime under both the FLSA and California Law, (b) failed to pay premiums for meal breaks and rest breaks pursuant to California Labor Code Sec.'s 226.7(a) and 512, (c) failed to properly included required wage statement information pursuant to California Labor Code Sec. 226 and (d) failed to pay all wages owed at termination pursuant to Labor Code Sec. 203, (e) violations of California Business and Professions Code Sec. 17200, et seq., and (f) civil penalties pursuant to the Private Attorneys' General Act and related relief as attorneys' fees and costs of suit per statute.

The Parties have diligently engaged in informal discovery to investigate the Claims alleged in the action and lengthy meet and confer discussions to address any of Plaintiffs' counsel's concerns. Plaintiffs served Special Interrogatories and Requests for Production of Documents, and Defendant served Requests for Production of Documents. The parties then agreed to mediation, and with the goal of permitting adequate discovery to evaluate the case, Defendant produced over 1,000 pages of relevant policies and procedures, bonus plans, Plaintiffs' personnel files, compensation agreements, wage statements and other documents, as well as electronic payroll data. See ¶6, Declaration of J. Glugoski and also, previously filed Declaration of Reuben Nathan filed in support of Motion for Preliminary Approval.

The Parties in this action attended a mediation session on May 17, 2018 with Hon. William J. Cahill, a well-respected labor and employment mediator. The Parties continued to negotiate and

work through the details of the settlement several weeks after the mediation and eventually reached an agreement after arms-length negotiation.

This Court previously determined preliminarily that the settlement that has been reached is a fair, reasonable and adequate resolution of the Class and Collective Claims, and directed that the Administrator provide the court-approved notice to the Class and Collective Members.  That process has been completed in accordance with the Court's order and the Parties' settlement agreement.  The Parties jointly request that the Court grant final approval to the settlement and enter a judgment in accordance with the terms of the settlement.

In exchange for a release of claims alleged in the Second Amended Complaint, Defendant agreed to pay as follows: 1) One Million Seven Hundred and Twenty-Five Thousand Dollars and No Cents ($1,725,000.00) shall be allocated to the Settlement Class ("California Class"), and 2) Five Hundred Thousand Dollars and No Cents ($500,000.00) shall be allocated to the Settlement Collective ("FLSA Class"). ***This is not a "claims made" settlement for the California class.***  No funds allocated to the California Class will revert back to Defendant. Defendant will calculate the total Compensable Work Weeks for all Settlement Class Members. The respective Compensable Work Weeks for each Participating California Class Member will be divided by the total Compensable Work Weeks for all Participating Settlement Class Members, resulting in the Payment Ratio for each Participating California Class Member. Each Participating California Class Member's Payment Ratio is then multiplied by the Net Settlement Amount to determine his or her estimated Individual Settlement Payment. Checks shall be made payable to each Participating California Class Member for payment of each Participating California Class Member's Individual Settlement Payment. Each California Class Member who does not opt-out will be entitled to his or her share of the Settlement Fund that is directly proportional to the number of workweeks during which the class member was employed with Home Point during the class period.  The amount of workweeks during which a California Class Member was employed with Defendant was calculated as a percentage of the overall number of workweeks for the California Class.  California Class Members will receive their pro-rata share of the available settlement funds.

Similarly, the exact amount allocated to each Settlement Collective Member depends

upon a pro rata distribution based upon the number of workweeks each Collective Member worked in the relevant time period compared to the total number of workweeks. After receipt of the court-approved notice, those who timely submitted a FLSA Opt-In Form will receive their pro rata share and release their FLSA claims. Settlement Collective Funds not sought by the Settlement Collective Members by submission of timely FLSA Opt-In Forms remain the property of Defendant and are not included in the amount required to fund the settlement.

On November 8, 2018, Plaintiffs filed their motion for preliminary approval. On April 12, 2019, this Court held a preliminary approval hearing, and the Court granted preliminary approval. In doing so, the Court appointed ILYM Group. Inc., as the third party claim administrator ("Claims Administrator") and approved a comprehensive notice program for dissemination to the class members. See ¶9, Declaration of J. Glugoski.

Specifically, Defendant provided the Claims Administrator, ILYM Group, Inc., with the names, last known mailing addresses, and relevant dates of employment of the 1631 Class Members of which 255 are California Settlement Class Members, 1376 FLSA Collective Class Members (6 individuals are members of both classes). The Claims Administrator commenced mailing by sending the notice packets to the 1631 class members on August 13, 2019. See ¶ 8, of the Decl. of Nathalie Hernandez from Claims Administrator ILYM Group.  The opt out, opt in and objection deadlines was July 20, 2019.  As noted above, no class member objected, only two members of the California class, and 451 Collective Members submitted timely opt-in forms (including 8 who submitted late but accepted opt-in forms). ¶ 12, Decl. of Nathalie Hernandez

The preliminary approval and notice process are now complete, leaving only completion of the final step (i.e., final approval).[3]  Plaintiffs hereby respectfully request that the Court carefully consider the submissions and complete the final stage of the approval process by issuing an Order:

---

[3]  Pursuant to Rule 23, the class action approval process consists of three steps: (1) the preliminary settlement approval hearing, (2) effectuating of the approved notice of settlement program (by which class members may opt-out of or object to the settlement), and (3) a final settlement approval ("final fairness") hearing, where the court, having carefully considered all of the evidence before it, including class members' objections, if any, makes a final determination regarding the adequacy of the settlement. *Manual for Complex Litigation* (4th Ed. 2007) §§ 21.632-21.634.

(1) Finally approving the proposed class action settlement as fair and reasonable; and (2) Awarding a fair and reasonable sum for attorneys' fees, enhancements and litigation costs.

**B.     Parties And Representation**

Matthew Righetti and John Glugoski of Righetti • Glugoski, P.C. and Reuben Nathan of Nathan & Associates, APC represent Plaintiff. Rod M. Fliegel and Alison S. Hightower of Littler Mendelson, P.C. represent Defendant, Home Point Financial Corporation.

**C.     Settlement Negotiations And Procedural History**

This case has been vigorously litigated by the parties. The Norona Action was filed on December 19, 2017 and alleged claims under the Fair Labor Standards Act, the California Labor Code, and the Private Attorney General Act, California Labor Code § 2698 *et seq.* ("PAGA), on behalf of groups of current and former non-exempt employees. As amended, on behalf of the Class, the Action alleges claims for compensation for all hours worked, including overtime wages, overtime premium pay, commissions and bonuses, alleged improper deductions to wages and commissions, meal and rest break violations, failure to reimburse business expenses, wage statement violations and failure to pay all wages owed at separation. The Action also seeks PAGA penalties for alleged failure to pay overtime premium pay, overtime wages, commissions and bonuses, failure to provide meal and rest periods, wage statement violations, and waiting time penalties. The original plaintiff was Brandon Norona. Linda Corbin was added as a named FLSA plaintiff on April 16, 2019, when Plaintiffs filed their Second Amended Complaint. Defendant answered the Complaint, denying all material allegations.

Prior to filing the initial complaint and during throughout the litigation, Class Counsel diligently pursued an investigation of the claims of Class Members against Defendant. There has been a considerable amount of informal investigation by both parties. Over the course of this litigation, the parties have obtained an abundance of information to assist them in properly analyzing their respective positions. This investigation has afforded both sides with ample opportunity to evaluate the veracity and probable success of the class and individual claims. Counsel for the Parties have further invested extensive time investigating the applicable law as it relates to class certification, Plaintiffs' liability claims and damages, and the defenses thereto. See ¶10, Declaration of J.

Glugoski.

Defendant produced relevant policies and procedures, bonus plans, Plaintiffs' personnel files, compensation agreements, wage statements and other documents plus extensive payroll data (i.e., employee start and end dates, payroll data, going to back to December 19, 2013, commission data, salary and overtime information, hours worked per day and/or week, for all employees covering the class period, which was analyzed in depth by Plaintiffs' expert to determine the extent of potential liability based on underpayment of overtime. As a result of the investigation and formal discovery Plaintiffs felt there was support for their original contentions. See ¶11, Declaration of J. Glugoski.

Class Counsel submits that the settlement that has been reached is a fair, reasonable and adequate resolution of the alleged claims, as it provides required compensation for the actual violations Class Counsel believes occurred based on their analysis of Defendant's records, plus additional amounts for interest, penalties and waiting time penalties, which the parties compromised in light of Defendant's defenses. Accordingly, Plaintiffs request that the Court enter an Order finally approving the settlement to effectuate payment to Class and Collective Members.

### III. SUMMARY OF SETTLEMENT TERMS

The total settlement value is as follows: 1) One Million Seven Hundred and Twenty-Five Thousand Dollars and No Cents ($1,725,000.00) shall be allocated to the Settlement Class ("California Class"), and 2) Five Hundred Thousand Dollars and No Cents ($500,000.00) shall be allocated to the Settlement Collective ("FLSA Class"). The net settlement amount for the California Class is calculated by deducting from Defendant's maximum total payment of Two Million Two Hundred and Twenty-Five Thousand Dollars and No Cents ($2,225,000.00) ("Total Settlement Amount"), attorneys' fees and costs not to exceed one-third of the Gross Settlement Fund. The Net Settlement Fund is the Gross Settlement Fund minus 33.3% attorney's fees and costs (the actual litigation costs of $16,965.43 are included in the 33.3% request), claims administration costs of $27,500.00, and Plaintiffs' incentive award not to exceed $10,000 each. See ¶¶15-18 Declaration of Nathalie Hernandez.

For the California Class, out of $1,725,000 allocated, $574,216.88 is requested for Class Counsel's Award, $15,500.00 for the Enhancement Award, $4,089.08 for Administration Fees, $25,000 for the PAGA award, leaving $1,106,194.06 available to the California Class. For the Collective Members allocated a gross amount of $500,000, $166,708 is requested for Class Counsel's Award, $4,500 for the Enhancement Award, $23,410.92 for Administration Fees, leaving $305,380.96 available to the Collective Members. The estimated amount claimed by the Collective Members who submitted opt-in forms is $128,528.47, representing 42.10% of the total amount available to the Collective Members. See ¶15-18 Declaration of Nathalie Hernandez containing the calculations for the FLSA Class.

The notice process has been completed. The California Class will receive on average $4,372.31 per class member and the FLSA class will receive on average $284.36 per class members. See ¶¶15-18 Decl. Nathalie Hernandez of ILYM Group, Inc.

## IV.  STATUS OF NOTICE PROCEDURE

### A.  Notices Sent Out, Re-Mailed, And Inquiries Received:

Pursuant to the Court's preliminary approval Order, on May 20, 2019, the Claims Administrator, mailed, via first class mail, a Notice of Class Action Settlement and/or Notice of Collective Settlement to each class/collective member at his/her last known address.[4] (Hernandez Decl. ¶¶ 3-9).

A declaration and report from the Claims Administrator along with an analysis of the claims process in this matter is submitted concurrently with these papers. (See, Hernandez Decl.).

Since mailing the Notice Packets to the class members, seventy-three (73) Notice Packets were returned to ILYM, fifty-one (51) Notice Packets were re-mailed after returned mail and skip tracing with forwarding addresses, and twenty-six (26) class members were deemed to have undeliverable addresses. The deadline to submit objections, requests for exclusion and opt-in forms (the latter for the Settlement Collective only) was on July 20, 2019. (¶¶7-11 Decl of Nathalie

---

[4] The mailing was accomplished after running Defendant's data through the National Change of Address (NCOA) database to obtain any recent address updates.

Hernandez of ILYM Group, Inc.)

### B. Only Two Requests For Exclusion

As of the date of this submission, there has been only two (2) requests for exclusion from the Settlement Class. (¶12 Decl of Nathalie Hernandez of ILYM Group, Inc.)  The deadline expired on July 20, 2019.

### C. No Objections

As of the date of this submission, there have been no objections.  (¶13 Decl of Nathalie Hernandez of ILYM Group, Inc.)  The deadline expired on July 20, 2019.

## V. FINAL SETTLEMENT APPROVAL IS APPROPRIATE

Pursuant to both state and federal rules of civil procedure, "a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. . . " (CCP § 1781(f); Fed. R. Civ. P. 23(e).).  In deciding whether to grant final approval of a proposed class action settlement under CCP § 382, the court's overriding concern is whether the proposed settlement is "fair, adequate, and reasonable." (*Dunk v. Ford Motor Company* (1996) 48 Cal.App.4th 1794, 1801 (quoting *Officers for Justice v. Civil Service Com.* (9th Cir. 1982) 688 F.2d 615, 625, cer. denied (1983) 459 U.S. 1217).)

In practical terms, the settlement of a class action follows three parts: 1) Preliminary approval of the proposed settlement; 2) Notice to Class Members, and 3) A Final Approval hearing or "Fairness Hearing" at which evidence and argument may be heard on the fairness, adequacy, and reasonableness of the settlement. The Court has given preliminary approval of the settlement and Notice has been delivered to all Class and Collective Members by mail.

### A. The Settlement Is Entitled To A Presumption Of Fairness.

A presumption of fairness exists where: 1) The settlement is reached through arm's length bargaining; 2) Investigation and discovery are sufficient to allow counsel and the court to act intelligently; 3) Counsel are experienced in similar litigation; and 4) The percentage of objectors is small. (*Dunk v. Ford Motor Company, supra*, 48 Cal.App.4th at 1802.)

To prevent fraud, collusion, or unfairness to the class, the settlement or dismissal of a class action requires court approval. (*Malibu Outrigger Bd. of Governors. v. Superior Court* (1980) 103 Cal.App.3d. 573, 578-579.) The purpose of the requirement is the protection of those class members, including the named plaintiff, whose rights may not have been given due regard by the negotiating parties. (*Officers for Justice v. Civil Service Com., supra*, 688 F.2d at 624.) The trial court has broad powers to determine whether a proposed settlement in a class action is fair. (*Mallick v. Superior Court* (1979) 89 Cal.App.3d 434.)

At the Final Approval Hearing, the Court should consider the relevant factors, such as the strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. (*Officers for Justice v. Civil Service Com., supra*, 688 F.2d at 624.) "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." (*Dunk v. Ford Motor Company, supra*, 48 Cal.App.4th at 1801.)

**B.     The Parties Reached The Settlement Through Arm's Length Negotiations.**

During all settlement discussions the parties conducted their negotiations at arms' length, with the assistance of a neutral mediator, and, in spite of a mutual desire to resolve the case, always in an adversarial manner.  The parties have been able to construct a settlement that, given the constraints and realities of the case, is fair, reasonable, adequate, and in the best interests of the Class.

**C.     Substantial Discovery Facilitated Arm's-Length Negotiations.**

The parties provided descriptions of the litigation events, the discovery conducted and information exchanged as part of the preliminary approval submissions.  Both sides had the opportunity to review documentation relating to policy and practice changes, record keeping, premium payments made, hourly rates, and work history for class members in an effort to determine the potential value of the claims. See Declaration of J. Glugoski and Declaration of Reuben Nathan filed in support of Motion for Preliminary Approval.

The available information has made it possible to estimate the potential claim of each member of the proposed settlement class and in fact compensate Class and Collective Members for actual damages resulting from data in Home Point's records. Sufficient investigation and discovery has been conducted for the parties to be sufficiently informed of the nature and extent of the Class and Collective Claims, and to enable both sides to evaluate fully the proposed settlement for its fairness, adequacy, and reasonableness in light of the circumstances.

### D. The Parties Have Reasonably Tailored the Monetary Recovery To Each Class/Collective Member's Claim.

The essential terms of the monetary settlement between Plaintiffs and Defendant provides for the payment of restitution and damages to each class/collective member according to the number of weeks each class member was employed as an hourly paid employee during the class or collective period. The parties have reasonably tailored the settlement to each class/collective member's claim for compensation in that the parties based the settlement on the number of weeks worked in the position covered by the action during the statutory time covered by the case.

### E. Class Counsel Are Experienced And Endorse The Settlement.

The proposed settlement is endorsed by the attorneys involved. As the courts have explained, the view of the attorneys actively conducting the litigation is "entitled to significant weight." (*Fisher Bros. v. Cambridge-Lee Industries, Inc.* 630 F. Supp. 482, 488 (E.D. Pa. 1985); see also *Ellis*, *supra,* 87 F.R.D. at 18; *Boyd*, *supra,* 485 F. Supp. at 616-17.)

Class Counsel has experience not only in class actions and employment litigation, but also specifically in wage and hour class actions. Declaration of J. Glugoski. In fact, class counsel includes the only attorneys ever to have actually tried, and prevailed, in wage and hour class action litigation under California's quantitative "Executive" exemption law. Declaration of J. Glugoski. Thus, the experience of the Class Counsel makes them qualified to evaluate the class claims and viability of the defenses. Declaration of J. Glugoski.

The recovery for each Class/Collective Member is on fair and reasonable terms – taking into consideration the amounts received, the risks inherent in litigation of this genre as discussed in detail in the Preliminary Approval motion, and the reasonable tailoring of each Class/Collective Member's

claim to the potential value of each claim. This settlement is fair, adequate, reasonable, and in the best interests of the Class. Decl. of J. Glugoski.

In addition, this Court should approve the settlement of the PAGA claims by the California Settlement Class as fair and reasonable, and direct the Administrator to pay all members of the Settlement Class their prorated 25% share of the PAGA award, and to pay the California Labor and Workforce Development Agency its 75% share of the PAGA award.

### F. The Named Plaintiffs Have Been Required To Enter Into General Releases, Waiving Viable Claims.

Service payments are recognized as serving an important function in promoting class action settlements, particularly where the named plaintiffs participated in the litigation. In *League of Martin v. City of Milwaukee*, 588 F.Supp. 1004 (E.D. Wis. 1984), the court held that the proposed settlement properly granted the named plaintiff individual relief. It is "not uncommon for class members… to receive special treatment in settlement," especially when they have been instrumental in prosecuting the lawsuit. Id. at 1024. Courts routinely approve awards to class representatives who expend special efforts that redound to the benefit of absent class members. *White v. National Football League*, 822 F.Supp 1389, 1406 (D. Minn 1993); *See*, *e.g.*, *Thorton v. East Texas Motor Freight*, 497 F.2d 416,420 (6th Cir. 1974)(approving greater awards for those who took a more active role in seeking class relief); *Huguley v. General Motors Corp.*, 128 F.R.D. 81,85 (E.D.Mich. 1989)(in a case where incentive awards not objected to, the court noted that "named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation they have borne."). In *Lo Re v. Chase Manhattan Corp.*, 1979 U.S. Dist. LEXIS 12210 at *16-17 (S.D.N.Y. May 23, 1979), the court approved payment of $229,000 out of a $1,579,000 settlement fund for the named plaintiffs, which represented the full value of their individual claims. One of the factors considered by the court in determining that such payments were fair was the fact that none of the absent class members had objected to these payments; another was the fact that plaintiffs' efforts conferred a benefit on a substantial number of people. Id. at *17.

In this instance, the efforts of the named plaintiff in pursuing this litigation has conferred a substantial economic benefit on a large number of current and former employees of defendant.

Without the efforts of the named plaintiff, these absent class members would have received no economic benefit whatsoever. The Notice provided to the class members advised them that plaintiffs would seek additional compensation for each named plaintiff up to ten thousand dollars ($10,000), and none of the absent class members have objected to the proposed service awards to the named plaintiffs in this action.

In addition, and more importantly, to obtain service awards, the Plaintiffs have been required to enter into a general release of all claims that Plaintiffs have against the Defendants. Plaintiffs have significant viable claims beyond the allegations of this lawsuit that they had to release to confer a benefit to a significant number of employee Class/Collective Members.

## VI. CONCLUSION

The Settlement Agreement provides substantial benefits to the Class Members that are fair, reasonable, and adequate. The final approval meets the standard required for the Court to grant final approval. Accordingly, Class Counsel respectfully requests that the Court grant final approval of the Settlement and enter judgment accordingly. Plaintiffs will submit a proposed order and judgment prior to the hearing.

Dated: August 19, 2019                     **RIGHETTI GLUGOSKI, P.C.**

                                           By: /s/ John Glugoski
                                               John Glugoski
                                           *Attorneys for Plaintiffs and the Class*

Dated: August 19, 2019                     **NATHAN & ASSOCIATES, APC**

                                           By: /s/ Reuben D. Nathan
                                               Reuben D. Nathan
                                           *Attorneys for Plaintiffs and the Class*