UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON NOROMA,<br><br>Plaintiff,<br><br>v.<br><br>HOME POINT FINANCIAL CORPORATION,<br><br>Defendant. | Case No. 17-cv-07205-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL**<br><br>Re: Dkt. Nos. 57, 59 |

Pending before the Court are two unopposed motions filed by Plaintiffs Brandon Norona[1] and Linda Corbin: (1) the motion for final approval of the parties' proposed class action settlement, Dkt. No. 59; and (2) the motion for attorneys' fees, expenses, and incentive awards, Dkt. No. 57. The Court held a final fairness hearing on September 26, 2019. *See* Dkt. No. 61. For the reasons detailed below, the Court **GRANTS** final approval and **GRANTS IN PART** Plaintiffs' motion for attorneys' fees, expenses, and service awards.

**I. BACKGROUND**

    **A. Factual Background**

Although Plaintiff Norona initially filed this case as the single named Plaintiff, Plaintiff Corbin was added to the action on April 16, 2019, following the Court's order granting preliminary approval of the class action settlement. *See* SAC ¶¶ 14–15; *see also* Dkt. No. 52. Plaintiffs Norona and Corbin brought this putative labor and employment class action against Defendant Home Point Financial Corporation. *See* Dkt. No. 53 ("Second Amended Complaint" or

---

[1] The initial complaint lists Plaintiff's name as "Brandon Noroma," and the case is captioned based on this spelling. *See* Dkt. No. 1. However, the Court will use the corrected spelling "Norona" for purposes of this order. *See, e.g.*, Dkt. No. 53.

"SAC"). Plaintiffs allege, on behalf of themselves and all others similarly situated, that Defendant had a uniform policy and practice of failing to (1) include commissions and bonuses as wages when calculating overtime pay; (2) pay premiums for meal and rest breaks; (3) provide complete wage statements; and (4) pay all wages owed at the time of termination of its employees, in violation of the Fair Labor Standard Act ("FLSA") and California law. *See* SAC ¶¶ 28–86. Plaintiffs further sought civil penalties under California's Private Attorneys' General Act ("PAGA"). *Id.* ¶ 87–105.

Plaintiffs brought claims on behalf of two groups of non-exempt Home Point employees, including "loan originators, mortgage professionals, loan officers, and loan processors" who were not compensated for all hours that they worked. *Id.* ¶ 7. *First*, Plaintiffs asserted a nationwide, opt-in collective action under FLSA, 29 U.S.C. § 216(b), on behalf of Home Point employees who worked from three years prior to the filing date up to the date of judgment ("FLSA Collective"). *See id.* ¶¶ 8, 12. *Second*, Plaintiffs asserted claims under the California Labor Code, California Business and Professions Code, and PAGA as part of an opt-out class action composed of Home Point employees who worked from four years prior to the filing date up to the date of judgment ("California Class"). *Id.* ¶¶ 9–11, 13.

### B. Settlement Agreement

On May 17, 2018, the parties held an all-day mediation before the Hon. William J. Cahill, during which they reached a settlement in principle. *See* Dkt. No. 32. The parties filed a motion for settlement, *see* Dkt. No. 50, and the Court granted preliminary approval of the settlement on April 12, 2019, *see* Dkt. No. 52. The key terms of the Settlement Agreement are as follows:

#### i. Class Definitions

The FLSA Collective is defined as:

> [A]ll persons currently or previously employed by Defendant in the United States while residing outside California, including under Defendant's previous name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, or efficiency, from December 19, 2014, through and including September 30, 2018, who have not previously released their

> claims. Individuals who resided in California for part of the relevant time period and outside of California for part of the relevant time period are included in the [California] Class for the workweeks employed by Defendant and residing in California, and included in the [FLSA] Collective for the workweeks employed by Defendant and residing in the United States but outside of California.

*See* Dkt. No. 50-4 ("Settlement Agreement" or "SA") ¶ 2.41.

The California Class is defined as:

> [A]ll persons currently or previously employed by Defendant in California, including under its prior name, Maverick Funding Corp., as non-exempt loan originators, mortgage professionals, loan officers, loan processors and other non-exempt employees in positions that were eligible for commissions and/or non-discretionary bonuses, the amounts of which are measured by or dependent on hours worked, production, or efficiency, from December 19, 2013 through and including September 30, 2018, who have not previously released their claims. The [California] Class does not include any person who was employed solely by Stonegate Capital Corporation and/or Cross-Line Capital, Inc. in California. Individuals employed as a non-exempt inside loan agent, mortgage advisor, or mortgage loan officer at Stonegate Capital Corporation and/or Cross-Line Capital, Inc. and subsequently employed by Defendant while residing in California as non-exempt employee are included in the Settlement Class but only for the period of time employed by Defendant starting June 1, 2017. . . . Individuals who resided in California for part of the relevant time period and outside of California for part of the relevant time period are included in the [California] Class for the workweeks employed by Defendant and residing in California, and included in the [FLSA] Collective for the workweeks employed by Defendant and residing outside of California.

*Id.* ¶ 2.35.

### ii. Settlement Benefits

FLSA Collective: Defendant has agreed to pay up to $500,000 to the FLSA Collective, with the actual amount paid out based on the number of opt-ins. SA ¶¶ 2.15, 2.42, 4.1, 5.1, 5.6.2.B. Of the estimated 1,382 FLSA Collective members who were sent notice, 461 have opted in.[2] *See* Dkt. No. 59-2, ¶¶ 8, 14; Dkt. No. 60 ¶ 3; *see also* Dkt. No. 62 at 2. FLSA Collective members will receive a pro-rata share of the available funds, based on the number of weeks the member worked during the covered period as reflected in the following formula: (FLSA

---

[2] During the final fairness hearing, the parties explained that they would honor late opt-in requests to the FLSA Collective submitted prior to the date judgment is entered in this matter, and such members will be subject to all of the provisions of the Settlement Agreement and this order. *See* Dkt. No. 60-1 at ¶ 10.

Collective Member's Total Workweeks / Total Workweeks in the Settlement Collective combined) x FLSA Collective Fund. *See* SA ¶ 5.6.2.B. However, the "Total Workweeks in the Settlement Collective combined" will include all 1,382 putative members of the collective, and not just the 461 who opted in. *Id.* After fees and costs, Plaintiffs estimate that $130,681.75 will be paid out to FLSA Collective members. *See* Dkt. No. 60 ¶ 4. The average award is expected to be approximately $284.09. *Id.* For tax purposes, the awards will be allocated as 50% wages and 50% liquidated damages. *See* SA ¶ 5.9.1.

California Class: Defendant has agreed to pay a total of $1.725 million, with no reversion, for the California Class fund. *See* SA ¶ 4.1. Of the estimated 255 California Class members, only two have opted out, for a total of 253 total participating members. *See* Dkt. No. 59-2 ¶ 14. California Class members will receive a pro-rata share of the available funds, based on the number of weeks the member worked during the covered period. *See* SA ¶ 5.6.2.A. After fees and costs, Plaintiff estimates that $1.1 million will be paid out to California Class members. *See* Dkt. No. 59-2 ¶ 15. The average award is expected to be over $4,000. *Id.* For tax purposes, the awards will be allocated as one-third wages, one-third statutory and civil penalties, and one-third interest. *See* SA ¶ 5.9.1.

PAGA Allocation: Defendant has agreed to pay $25,000 to settle claims under PAGA. *See* SA ¶ 2.21. Of this, three-quarters ($18,750) will be paid to the California Labor Workforce Development Agency, and one-quarter ($6,250) will be paid to the California Class. *Id.* ¶¶ 2.21, 2.36. All California Class members (even those who opt out) will receive their pro-rata share of the PAGA payment. *See id.* ¶¶ 3.10.5, 3.10.9, 5.3.

### iii. Release

FLSA Collective members will release:

> "[A]ny and all present and past claims, actions, demands, causes of action, suits, debts, obligations, rights or liabilities, arising out of their employment with Home Point based on the facts, conduct, claims, and/or allegations in the Complaint, First Amended Complaint and Second Amended Complaint pursuant to the Fair Labor Standards Act, 29 U.S.C. sections 201 *et seq.* regarding non-payment of wages, minimum wages, overtime wages, and any other compensation (including but not limited to regular rate calculations and overtime premium pay), failure to timely pay any compensation (including but

4

not limited to wages, bonuses, or commissions), and includes all wages, overtime, overtime premium, liquidated damages, costs and expenses, attorneys' fees, declaratory relief, injunctive relief, equitable remedies, exemplary or punitive damages, and/or pre- or post-judgment interest, at any time during the [FLSA] Collective Period of December 19, 2014, through September 30, 2018. [FLSA] Collective Members' Released Claims also includes all claims that the [FLSA] Collective Members may have against the Released Parties relating to (i) the payment, taxation and allocation of attorneys' fees and costs to Class Counsel pursuant to this Settlement Agreement and (ii) the payment, taxation and allocation of Plaintiffs' Service Awards pursuant to this Settlement Agreement.

SA ¶ 2.44.

California Class members will release:

> [A]ny and all present and past claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature alleged in the Complaint, the First Amended Complaints, the proposed Second Amended Complaint ("the Complaints") and/or in Plaintiff Norona's December 14, 2017 PAGA letter to the LWDA concerning Defendant ("the PAGA Letter"), or which could have been asserted based on the facts alleged in the Complaints and/or the PAGA letter, including without limitation all claims for unpaid wages, minimum wage, overtime, double-time, wages (including the calculation of the regular rate), failure to timely pay compensation (i.e., wages, bonuses, or commissions), failure to provide compliant meal periods and rest breaks, failure to reimburse business expenses incurred, wage statement violations, and untimely final pay, seeking wages, overtime, overtime premium pay, exemplary or punitive damages, waiting time penalties, civil penalties, statutory penalties, liquidated damages, restitution, declaratory relief, injunctive relief, equitable remedies, attorneys' fees, costs, disbursements, and/or pre- or post-judgment interest, at any time from December 19, 2013 through September 30, 2018. The [California] Class Members' Released Claims include all claims alleging violations of, or seeking relief under, California Labor Code sections 200, 201, 201.3, 202, 203, 204, 204b, 204.1, 204.2, 205, 205.5, 208, 218, 218.6, 226, 226.3, 226.7, 501, 502, 503, 504, 505, 506, 507, 508, 510, 512, 515, 558, 1182, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.5, 1198, 2802, 2810.5, 2698 *et seq.*, the California Industrial Wage Commission Wage Orders, the California Business and Professions Code sections 17200 *et seq.*; and any other similar laws. [California] Class Members' Released Claims also include all claims that Plaintiffs and/or the [California] Class Members may have against the Released Parties relating to (i) the payment, taxation and allocation of attorneys' fees and costs to Class Counsel pursuant to this Settlement Agreement and (ii) the payment, taxation and allocation of Plaintiffs' Service Awards pursuant to this Settlement Agreement. [California] Class Members' Released Claims also include Plaintiffs' causes of action/claims for penalties under PAGA, which are fully released by [California] Class Members.

SA ¶ 2.38.

### iv. Class Notice & Procedure

The parties agreed that third-party settlement administrator ILYM Group, Inc. would send notices to class members in accordance with the Settlement Agreement. *See* SA, Exs. A–B; *see also* Dkt. No. 59-2.

### v. Service Awards

The Settlement Agreement permits Plaintiffs Norona and Corbin to seek a service award of up to $10,000 each. *See* SA ¶ 2.31; *see also* Dkt. Nos. 57-2, 57-3.

### vi. Attorneys' Fees and Costs

The Settlement Agreement permits Plaintiffs' counsel to file a separate motion for attorneys' fees, seeking up to one-third of the gross settlement fund of $2.225 million. *See* SA ¶ 4.3; *see also* Dkt. No. 57.

## II. DISCUSSION

### A. Final Settlement Approval

#### i. Class and Collective Action Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998). And certification of a collective action is within the discretion of the district court. *See* 29 U.S.C. § 216(b); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013). Because no facts that would affect the class requirements or the Court's discretion in certifying a class action have changed since the Court preliminarily approved the California Class and FLSA Collective on April 12, 2019, this Order incorporates by reference its prior analysis under Rules 23(a) and (b) and the FLSA as set forth in the order granting preliminary approval. *See* Dkt. No 52 at 6–11.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th

Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625. In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Similarly, a proposed FLSA settlement must be "a fair and reasonable resolution of a bona fide dispute . . . ." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). As discussed in more detail below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that FLSA Collective and California Class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id.* Although Rule 23 requires that reasonable efforts be made to reach all class

7

members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 52 at 15. Nathalie Hernandez, Operations Manager for ILYM Group, Inc. represents that ILYM, the third-party settlement administrator, sent the Notice Packet via U.S. First Class Mail to all 1,631 unique individuals based on the class data file from Defendant. *See* Dkt. No. 59-2 ¶¶ 1, 4–8. For returned Notice Packets, ILYM performed a computerized skip trace to obtain a forwarding address, then re-sent the Notice Packets via First Class Mail. *See id.* ¶¶ 9–10. ILYM also re-sent Notice Packets to four California Class members at their request. *Id.* As of August 19, 2019, a total of 26 Notice Packets were returned as undeliverable. *Id.* ¶ 11. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class and Collective members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiffs' Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the

8

complexity and length of this litigation, and the substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 50 at 18–20 (estimating range of possible recovery and possible defenses should the litigation move forward). In reaching a settlement, Plaintiffs have ensured a favorable recovery for the FLSA Collective and California Class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a California Class encompassing approximately 253 individuals as well as an FLSA Collective of 461 individuals presents complex issues that could undermine certification. *See* Dkt. No. 59-2 ¶ 14. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval.

Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the approximately $1.1 million that will be paid out to the California Class after fees and costs, *see* Dkt. No. 59-2 ¶ 15, falls well "within the range of reasonableness" in light of the risks and costs of litigation. *See, e.g.*, *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018); *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial). The parties have estimated that the average recovery of each individual California Class member will be over $4,000, with the estimated highest gross payment being $12,188.02, and the estimated lowest gross payment being $14.95. *See* Dkt. No. 59-2 ¶ 15. The parties have also estimated that the average recovery of each individual FLSA Collective member will be $284.09, with the

9

estimated highest gross payment being $749.17, and the estimated lowest gross payment being $15.20. Dkt. No. 60 ¶ 4. In supplemental briefing submitted following the final fairness hearing, Plaintiffs further clarified that their expert conducted a detailed analysis of each of the 461 FLSA Collective opt-in members' claims and estimates that the settlement represents a full recovery of the unpaid overtime to those Collective members. *See* Dkt. No. 62; *see also* Dkt. No. 62-1, Ex. 1; Dkt. No. 62-2. Plaintiffs' expert estimated that the total unpaid overtime for the 461 FLSA Collective members is $127,724. *See* Dkt. No. 62-2 at ¶ 10. And Plaintiffs estimate that Collective members will receive $130,681.75 total, such that the Collective will actually receive *more* than 100% of their unpaid overtime. *See id.* at ¶¶ 12–13.

The Court further finds that the parties have reasonably tailored each class member's anticipated recovery based on the number of weeks worked during the covered time period. *See, e.g.*, Dkt. No. 59 at 11. This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Plaintiffs were able to reach this settlement only after Plaintiffs conducted extensive discovery, including reviewing documents related to Defendant's policies, bonus plans, personnel files, and wage statements, and engaged in a full-day mediation session. *See* Dkt. No. 59 at 7; Dkt. No. 57-1 ¶ 13; *see also* Dkt. No. 32. The Court finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously

10

evaluated class counsel's qualifications and experience and concluded that class counsel is qualified to represent the Class and Collective members' interests in this action. *See* Dkt. No. 52 at 8; *see also* Dkt. No. 59 at 11–12. Class counsel has considerable experience in class actions and employment litigation, and settled only after assessing the risks of continuing the litigation. *See id.* The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class and Collective members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on California Class and FLSA Collective members in accordance with the methods approved by the Court, advised that the deadline to file an objection to or opt out of the settlement was July 20, 2019. *See* Dkt. No. 59-2 ¶¶ 12–13. ILYM did not receive any objections, and only two members of the California Class opted out. *See id.* Although the number of FLSA Collective opt-ins represents approximately a third of putative Collective members, the Court finds that the parties made every effort to provide adequate notice and that this level of participation is in keeping with the average for FLSA settlements.

\* \* \*

After considering and weighing the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the California Class and FLSA Collective members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees and Costs, Settlement Administrator Costs, and Incentive Award

In its unopposed motion, Class Counsel asks the Court to approve an award of $749,000 as well as incentive awards of $10,000 for each named Plaintiff. *See* Dkt. No. 57.

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941(*citing Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*.

(citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, [ ] either method may [ ] have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (quotations omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

### b. Discussion

Here, Plaintiffs' counsel asks the Court to approve an award of $749,000, or approximately one-third of the total potential settlement amount. *See* Dkt. No. 57. Counsel acknowledges that its requested attorneys' fees are greater than the 25% benchmark and its lodestar, but contends that the higher percentage—or what is approximately a 1.5 multiplier on its lodestar—is warranted given the complexity of the case; the risks associated with this litigation; the skill exhibited by counsel; the results achieved; and awards in comparable cases. *See id.* at 9–15, 17–18. Counsel further notes that it was able to negotiate with ILYM to cap its fees at $27,500, which further added value for the Class and Collective members. *See* Dkt. No. 57-1 ¶¶ 42, 46. Counsel, which includes two law firms, calculates that it has earned approximately $503,247 in fees, *see id.* ¶¶ 36, 41, & Exs. 1, and has incurred $16,650.43 in additional costs to litigate this action. *See* Dkt. No. 57-1 ¶ 49; Dkt. No. 57-5 ¶ 22, & Ex. 1.

The Court recognizes that class counsel obtained significant results for the California Class and FLSA Collective members, as discussed in Section II.A.ii, above. Moreover, no California Class or FLSA Collective members objected to the settlement; only two California Class members

requested exclusion; and over a third of the FLSA Collective members opted in, suggesting strong support for the settlement's outcome. Further, class counsel assumed substantial risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts.

The Court is, however, also cognizant of its obligations to review class fee awards with particular rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (quotation omitted). Here, the parties worked efficiently to settle this action, with no motions practice and only six months after filing the complaint. The Court recognizes that class counsel has pointed to cases in which courts have awarded attorneys' fees above the twenty-five percent benchmark, but does not find that the record warrants doing so in this case. Accordingly, the Court finds the twenty-five percent benchmark appropriate.

This is confirmed by class counsel's lodestar. Having reviewed class counsel's filings, the Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and generally in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See, e.g., Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (collecting cases, and finding prevalent rates ranging from $400 for associates to $750 for partners litigating civil rights and employment cases in this District). The Court further finds that the hours expended were reasonable and non-duplicative. Plaintiffs' counsel's lodestar calculation of $503,247, *see* Dkt. No. 57-1, represents almost exactly twenty-five percent of the settlement fund, placing it in line with the Ninth Circuit's presumptively reasonable benchmark. *See In re Bluetooth Headset*, 654 F.3d at 942.

Under the percentage-of-fund-method, the Court **GRANTS** attorneys' fees of 25% of the total settlement amount, or $556,250.

//

14

### ii. Incentive Award

Plaintiffs' counsel requests a service award of $10,000 for each named Plaintiff. *See* Dkt. No. 57; *see also* Dkt. Nos. 57-2, 57-3. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

*First*, Plaintiff Norona estimates that he has spent over eighty hours actively participating in this litigation, working with counsel to review documents, prepare this action, and discuss settlement documents. *See* Dkt. No. 57-2 ¶¶ 3–10. Indeed, Plaintiff Norona played a key role in this action, researching attorneys who specialized in labor and employment law, and ultimately contacting counsel from Righetti Glugoski P.C. given their experience with these cases. *See id.* ¶¶ 2–4. *Second*, Plaintiff Corbin estimates that she has spent over forty hours actively participating in this litigation, communicating with counsel and reviewing documents. *See* Dkt. No. 57-3 ¶¶ 3–9.

Counsel further notes that both Plaintiffs put themselves at risk by filing a lawsuit against their employer and executed full and general release of claims, distinct from their California Class and FLSA Collective members. *See id.* Plaintiff Norona believes that he has potential claims for hostile work environment and wrongful termination that he is releasing as part of the settlement,

15

*see* Dkt. No. 57-2 ¶ 14; and Plaintiff Corbin asserts that she has potential claims for discrimination and wrongful termination that she is releasing as part of the settlement, *see* Dkt. No. 57-3 ¶ 13. Neither provide detail such that the Court could evaluate or attempt to quantity the release of such claims.

Nevertheless, the Court finds that Plaintiff Norona added substantial value to this case. He has been actively involved with the case since it was filed in 2017, and he participated with counsel to prepare the action and to review and discuss settlement documents. *See* Dkt. No. 57-1 ¶¶ 52–54. The Court finds that an incentive award of $10,000 for Plaintiff Norona, a member of the California Class, is not disproportionate to the $4,000 average recovery members of that class are estimated to receive as part of the Settlement Agreement. *See* Dkt. No. 59-2 ¶ 15; *see also* SAC ¶ 14.

The Court further finds that Plaintiff Corbin added value to this case once she became involved. However, Plaintiff Corbin, as noted above, was not added as a named Plaintiff until April 16, 2019, after the Court issued its order granting preliminary approval of the settlement, and thus devoted less time to this action. *See* SAC (filed April 16, 2019). Moreover, Plaintiff Corbin, as an out-of-state former employee, is only part of the FLSA Collective. *See* SAC ¶ 5. The Court does not believe it is appropriate to award Plaintiff Corbin more than thirteen times the maximum recovery projected for other FLSA Collective members based on her late contributions to this action. *See* Dkt. No. 59-2 ¶¶ 15, 17; *see also Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (rejecting $7,500 incentive award where class members were estimated to receive $1,608.16); *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015) (rejecting $11,000 incentive award where class members were estimated to receive between $600 and $4,000); *Ko v. Natura Pet Prod., Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (awarding $5,000 incentive award for 50–100 hours in contributions over two-year litigation). The Court finds that an incentive award of $5,000 is warranted under the circumstances.

Based on the facts presented, including the named Plaintiffs' contributions to the class, Class Counsel's request for an incentive award is **GRANTED IN PART** in the amount of

16

$10,000 for Plaintiff Norona and $5,000 for Plaintiff Corbin.

**III. CONCLUSION**

For the foregoing reasons it is hereby ordered that:

1. Plaintiffs' Motion for Final Approval of Class Action Settlements is **GRANTED**;

2. Plaintiffs' Motion for Class Counsel's Attorneys' Fees, Expenses, and Service Awards is **GRANTED IN PART**.

3. The Court approves the settlement amount of $2,225,000, including payments of attorneys' fees in the amount of $556,250, or twenty-five percent of the settlement amount; and an incentive fee for the two named Plaintiffs in the amount of $10,000 for Plaintiff Norona and $5,000 for Plaintiff Corbin, for a total of $15,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a stipulated final judgment within 21 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 11/6/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

17